**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 96-50372

(Summary Calendar)
_____


JAMES JERRY SMITH, Estate of John Terry Smith,

                              Plaintiff - Appellant,

versus


MARTIN PRAGER, ET AL,


                              Defendants


MARTIN PRAGER; RHETA PRAGER

                              Defendants - Appellees.


---

Appeal from the United States District Court
For the Western District of Texas
(A-93-CA-772)

---

January 27, 1997

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

    James Jerry Smith, in his capacity as executor of the estate of

John Terry Smith and pro se, appeals the district court's grant of

---

    [*]    Pursuant to Local Rule 47.5, the Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

summary judgment dismissing his civil ERISA suit against Martin Prager, president of BPR Grouting and Engineering, Inc. ("BPR"). Because genuine issues of material fact remain, we vacate the order of the magistrate judge and remand for further determination.

The record below presents a less-than-clear picture of the facts in this case; however, a rough outline of what is alleged is discernible from the pleadings. John Terry Smith was a member of BPR's Employee Profit Sharing Plan and Trust (the "plan"). Administration of the plan is governed by 29 U.S.C. § 801 et seq., the Employment Retirement Income Security Act of 1974 ("ERISA"). Smith executed a promissory note secured by his share in the retirement plan. When he was no longer able to make payments on the note, Smith requested that it be paid from his share in the plan.

Smith left the employ of BPR in July 1987. A few months later, administrators told Smith that the plan could not distribute assets to pay his note until June 30, 1988, roughly one year after his termination. As that date approached, BPR informed Smith by letter that the value of his shares was $67,018.81, more than enough money to cover the note. Nonetheless, Smith encountered difficulty extracting any money from the plan, although it apparently never explicitly denied him a distribution.

In December 1988, Smith received notice of the termination of the retirement plan. Because the major investment of the plan was the real estate comprising the situs of BPR's offices and

surrounding unimproved property, administrators set up a corporation, Luna Realty, Inc., to hold title to the property. Participants in the plan would receive shares of Luna Realty stock in proportion to the value of their accounts. Luna would sell the property as soon as possible so that the participants could receive cash for their shares. According to lawyers for the fiduciaries, the trustees of the plan intended to make a distribution within the first few months of 1989. On December 14, 1988, Smith's brother, James Jerry Smith, expressed his concern in a letter to BPR's counsel that the plan was delaying payment to his brother, as well as his opinion that BPR management was concealing and stripping the assets of the company. John Terry Smith died one month later, and James Jerry Smith began to seek distribution from the plan on behalf of his brother's estate.

As John Terry Smith's life ended, BPR's legal problems began in earnest. In November 1989, the Internal Revenue Service informed BPR that its practice of renting its office space from its employee security plan was prohibited by tax law. The Service assessed an excise tax, and the plan lost $47,850 in lease payments and $9,365 of interest due. BPR filed Chapter Seven bankruptcy in June 1991, revealing an outstanding loan to BPR President Martin Prager for $49,000.

James Jerry Smith, on behalf of his late brother's estate, filed a "Motion for Declaratory Judgment" in the Western District of Texas. He alleged that Prager, acting as trustee of the plan,

violated his fiduciary duties under 29 U.S.C. §§ 1104(a) and 1103(c) by allowing the assets of the plan to inure to his and his wife Rheta Prager's benefit. The motion alleged that the Pragers failed to pay rent due for the use of the plan's property, borrowed from the plan, and refused to pay the loan or interest. The complaint further alleged that the company's lease agreement and subsequent failure to pay rent made BPR a borrower of the plan in violation of 29 U.S.C. § 1106. Finally, Smith asserted that the trustees failed to diversify the investments of the plan's assets, effectively removing assets from the plan through personal loans and failure to pay rent. Smith sought actual damages, interest, and punitive damages on behalf of his brother's estate.

The parties agreed to proceed before a magistrate judge. Defendants Martin and Rheta Prager filed a motion for summary judgment and a motion to dismiss for failure to state a claim upon which relief could be granted. The motion and accompanying affidavit stated that Rheta Prager, a BPR director, had no connection with the plan at any time, that Smith's complaint was time barred, and that the plan had made payment to the estate in full. Smith answered that Martin Prager's breach of fiduciary duty caused the plan to be unable to meet its obligation to his brother's estate. The magistrate entered an order dismissing the claims against Rheta Prager and dismissing the action as untimely.

Smith filed a timely notice of appeal, contending that the magistrate misapplied the statute of limitations. Smith argues

-4-

that the relevant statute of limitations under ERISA is six years, not three, because of a statutory extension for fraud cases. Smith does not contest the magistrate judge's dismissal of his claims against Rheta Prager. Therefore we address only his challenge to the magistrate's dismissal under the statute of limitations. *Brinkman v. Dallas County Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

In an appeal from summary judgment, we review the record de novo, examining the evidence in the light most favorable to the nonmoving party. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on summary judgment motions, we credit the evidence of the nonmovant and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). The moving party must demonstrate that there is no genuine issue of material fact, but it need not negate the elements of the other party's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the moving party fails to meet this burden, the deciding judge should deny the motion for summary judgment regardless of the nonmovant's response. *Id*.

At issue in this case is the statute of limitations for ERISA

claims, set forth in section 1113, which states:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of))
>
>> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>>
>> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> *except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.*

29 U.S.C. § 1113 (emphasis added). Under this statutory scheme, the limitations period for ERISA claims is generally six years, unless defendants can show that the plaintiffs had actual knowledge of alleged wrongdoing, in which case section 1113(2) extinguishes the claim after three years.  The last clause of the statute is an exception to section 1113(1) and (2), extending the limitations period to six years from discovery for cases of fraud or concealment.  Prager contends that Smith actually knew the relevant facts as early as June 1987 and no later than December 14, 1988, when BPR notified John Terry Smith that the plan would be terminated.  James Jerry Smith filed this action on December 8, 1993.

We have held that actual knowledge sufficient to trigger the three-year limitations period of section 1113(2) is a "stringent

requirement" and that section 1113 "sets a high standard for barring claims against fiduciaries prior to the expiration of the section's six-year limitations period." *Reich v. Lancaster*, 55 F.3d 1034, 1057 (5th Cir. 1995).

Viewing the evidence in the light most favorable to Smith, the nonmoving party, we find that the magistrate judge erred as a matter of law in granting summary judgment in favor of Martin Prager. Two considerations inform our holding. First, Smith introduced evidence of fraud and concealment that Prager did not sufficiently refute for purposes of summary judgment. The magistrate judge held that the limitations period for fraud did not apply because Smith "failed to present any specific evidence of fraudulent activity or concealment." However, at the hearing on Prager's motion for summary judgment, Smith used exhibits to show that cash distributions had been made to a corporate officer who had been a trustee of the plan, to the exclusion of other participants. Smith also suggested that Prager's bankruptcy discharge of over $100,000 owed to the plan was evidence that Prager defrauded the participants. We find that Smith's exhibits and evidence are sufficient to create a fact issue. The nonmoving party need not produce a preponderance of evidence, or evidence in a form that would be admissible at trial, to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

Prager did not produce sufficient rebuttal evidence to take these issues of fraud or concealment out of factual dispute. At the hearing, Prager offered some evidence that the fiduciaries committed no fraud. He alleged that the issuance of shares met the plan's obligation to Smith. Prager also claimed that BPR's ill-conceived rental scheme was not fraudulent. Prager did not address evidence that he allowed plan assets to inure to his benefit, nor that his conduct led to the termination of the plan. Significant fact issues remain, involving the propriety of personal loans taken by the Pragers, the couple's self-dealing of Luna Realty shares, the destruction of relevant records in a fire, and whether BPR's office rental scheme defrauded the plan. We express no opinion on the merits of those issues, but we note that they are not resolved by the incomplete record below.

Second, Prager has not shown that there is no issue of material fact concerning when or whether Smith and his estate had actual knowledge of the breach. The presumption in this circuit is for a limitations period of six years in ERISA cases, subject to an exception where the defendant can make a stringent showing of actual knowledge. *Reich*, 55 F.3d at 1057. Prager points to the December 14, 1988, letter in which Smith expressed his concern that BPR management was concealing and stripping the assets of the company. However, this letter does not indicate that Smith was aware of "all material facts necessary to understand that some

-8-

claim exists." *Reich*, 55 F.3d at 1057.  The entire allegation of the letter is contained in the following sentence: "It appears to me that all of the evasive activity by BPR has only allowed management to conceal and strip the company of its assets."  This statement alone is insufficient to meet our stringent requirements for actual knowledge.

Construing the incomplete record in the light most favorable to Smith, the brothers were unaware of personal loans taken out by the Pragers, unaware of the fact that the IRS would force restructuring of BPR's lease, and unaware of the ultimate value of their shares of the plan.  Prager has not shown actual knowledge of these facts.  Therefore the magistrate erred in applying the three-year limitations period of section 1113(2) in the face of unresolved fact issues regarding Smith's actual knowledge.  The magistrate also erred in using December 14, 1988, as the date on which the limitations period began to run, because the record does not establish when Smith and his estate became aware of certain material facts.  Because we find that neither Smith's letter nor the letter announcing termination of the plan afforded knowledge of all necessary and material facts, the magistrate on remand should review the evidence to establish exactly when Smith's cause of action accrued.

We therefore VACATE the order of the magistrate judge dismissing Smith's suit as untimely and REMAND the case for further

proceedings. Accordingly, we DENY Smith's various subsequent motions as moot.